**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JERALD ALAN HAMMANN, )
)
                     Plaintiff, )   Case No. 2:08-cv-00886-LDG-GWF
)
vs. )   **ORDER**
)
800 IDEAS, INC., )   **Renewal of Motion for Discovery**
)   **Sanctions - #78**
                     Defendant. )
_____)

       This matter is before the Court on Plaintiff's Renewal of Motion and Memorandum for Discovery Sanctions (#78), filed on May 20, 2010; Defendant's Memorandum of Law in Opposition to Plaintiff's Second Motion for Discovery Sanctions (#117), filed on June 7/16, 2010; and Plaintiff's Reply Memorandum to Motion for Sanctions filed on June 16, 2010.  The Court conducted a hearing in this matter on June 23, 2010.  Thereafter, the parties, without leave to do so, submitted letter memoranda to the Court.  See Docket Nos.  133, 134, 154 and  157.

**BACKGROUND**

       Plaintiff Jerald Hammann again asks the Court to impose sanctions on Defendant 800 Ideas, Inc. based on its alleged failure to preserve relevant documents, i.e. for "spoliation of evidence." The following summary is based on the background in Order (#74) together with additional information submitted by the parties in regard to Plaintiff's renewed motion.

       Plaintiff sued Defendant 800 Ideas, Inc.[1] in this action for violations of the Communications Act of 1934, 47 U.S.C. §§151, 201(a) and (b), and regulations adopted pursuant thereto, relating to the hoarding, brokering and warehousing of toll-free telephone numbers in violation of 47 C.F.R. §52.107(a)(1) and (2) and §52.105(b), and for violation of lag time and first come, first serve

---

[1] Order (#74) identified Defendant as "1-800 Ideas, Inc." Defendant's correct legal name as set forth in its corporate filings is "800 Ideas, Inc."

1  regulations under §52.103(a)(2) and §52.111.  Plaintiff also accuses Defendant of monopolizing or
2  attempting to monopolize trade in violation of 15 U.S.C. §2.  Plaintiff's lawsuit arises out of his
3  efforts beginning in August 2000 to obtain the toll free telephone numbers 800-246-4238 and 888-
4  246-4238 for a prospective business called "ChoiceTime."  Plaintiff allegedly discovered that these
5  numbers and numerous other toll-free telephone numbers were being hoarded, brokered,
6  warehoused, etc. in violation of Federal law.  In particular, Plaintiff alleges that on August 9, 2000
7  he made contact with Richard Jones, a representative of an entity known as 1-800 Ideas.com.  Mr.
8  Jones offered to sell Mr. Hammann an Internet domain name (worth approximately $35) for
9  $100,000 with the 800-246-4238 number included as part of the package.  Mr. Jones also allegedly
10 offered to sell him an Internet domain name for $80,000 with the 888-246-4238 number included
11 as part of the package.  *See First Amended Complaint (#26)*, ¶¶ 24-25.

12         Mr. Hammann filed an action against 1-800 Ideas.com, Inc., 1-800 San Diego Inc. and
13 individual defendants Steve Parker, Richard Jones and David Sprouse in the United States District
14 Court for the District of Minnesota in 2003.  *Hammann v. 1-800 Ideas.com, Inc., et.al., Civil No.
15 03-3342(DWF/SRN)* (hereinafter "Minnesota action").  The Defendant in this action, 800 Ideas,
16 Inc., was not initially named as a defendant in the Minnesota action.  On November 24, 2004, the
17 court in the Minnesota action ordered the defendants to provide responses to Mr. Hammann's
18 requests for production of documents relating to toll free numbers.  *See Minnesota action, order
19 (#96)*.  On June 17, 2005, the magistrate judge granted Mr. Hammann's motion for sanctions based
20 on the manner in which the defendants produced documents to Mr. Hammann.  The magistrate
21 judge also expressed her doubts regarding defendants' representation that they did not retain
22 records regarding the toll free numbers in electronic data bases.  *Id.*, p. 16, n. 5.  In their objection
23 to the magistrate judge's sanction order, defendants submitted an affidavit by David Sprouse, the
24 president of 1-800 Ideas.com, who stated that it would be unduly burdensome to produce such
25 records and that production would also violate the confidentiality interests of defendant's clients.
26 *See Minnesota action, (#100), Sprouse Affidavit*.  On August 15, 2005, the district judge upheld the
27 magistrate judge's sanction order.  *Minnesota action, order (#103)*.
28        . . .

On October 24, 2005, the court in the Minnesota action granted Mr. Hammann's motion to join 800 Ideas, Inc. as a defendant. On July 14, 2006, however, the magistrate judge recommended that 800 Ideas, Inc.'s motion to dismiss based on lack of personal jurisdiction be granted. *See Hammann v. 1-800 Ideas.Com, Inc., et.al.*, 455 Supp.2d 942, 965 (D.Minn. 2006). In recommending dismissal of 800 Ideas, Inc., the magistrate judge cited the affidavit of 800 Ideas, Inc.'s president, Susan Parker, who stated that 800 Ideas, Inc. had not engaged in any business activities in Minnesota. The magistrate judge also discussed the following factual allegations that Plaintiff made in support of personal jurisdiction over 800 Ideas, Inc.: (1) In 1993, 800-Ideas, Inc. acquired the disputed 800 number and became the listed subscriber for that number in the SMS database;  (2) if ever an affiliation existed between 800 Ideas, Inc. and 1-800 Ideas.com, Inc., that affiliation was terminated prior to the end of 1995; (3) in 1997, 800 Ideas, Inc. began providing telecommunications services to Choice Mortgage USA, Inc., an unaffiliated New Hampshire corporation; (4)  at least through June 26, 2001, 800 Ideas, Inc. was invoiced for the disputed 800 number and numerous other toll-free numbers; (5) in 2002, either 800 Ideas, Inc. or 1-800 Ideas.com, Inc. began providing telecommunications services to 1-800 San Diego, Inc., a California corporation unaffiliated with 800 Ideas, Inc.; and (6) in 2004, 800-Ideas, Inc. was listed as the subscriber in the SMS 800 database for the disputed 800 number. *Id.*, 455 F.Supp.2d at 965.  In recommending that 800 Ideas, Inc.'s motion to dismiss be granted, the magistrate judge stated:

> Assuming, arguendo, that the above assertions are true, the Court finds that none of them assert that 800-Ideas, Inc. purposefully contacted Minnesota. In fact, the above allegations do not assert 800-Ideas, Inc. had any connection to Minnesota at all. Plaintiff alleges that, on August 6, 2000, he contacted a local responsible organization, Qwest Communications, to secure the 800-246-4238 and 888-246-4238 numbers. (Fifth Amend. Compl. ¶ 47.) Qwest told Plaintiff that 1-800 Ideas.com was the subscriber listed for the 888 number. (*Id.* ¶ 50.)  Plaintiff contends, thereafter, he initiated a search to find the subscriber listed for the 800 number. (*Id.* ¶ 52.) According to Plaintiff, this search led him to Communications Management Services which later indicated that 800 Ideas.com was the responsible Organization for both the 888 and the 800 number. (*Id.* ¶ 63.) Plaintiff has not alleged that 800-Ideas, Inc. advertised in Minnesota or otherwise tried to contact him or any other potential Minnesota customer or had any other contact with Minnesota.

*Id.*, 455 F.Supp.2d at 965-6.

3

The district judge adopted the magistrate judge's recommendation on September 7, 2006. *Hammann v. 1-800 Ideas.Com, Inc., et.al.*, 455 Supp.2d at 965-6. The magistrate judge also recommended that Mr. Hammann's motion for summary judgment against the other defendants be denied. Although the district judge approved the denial of Mr. Hammann's motion for summary judgment, he stated that Plaintiff had a strong case on liability. *Id.*

The parties in the Minnesota action, which no longer included 800 Ideas, Inc., subsequently settled that case in November 2006. Plaintiff has filed a copy of the Release, Settlement and Indemnification Agreement as Exhibit 41 to his Renewed Motion. *See Affidavit Regarding Documents (#81)*. The agreement states that the settlement was only between Plaintiff Hammann and 1-800 Ideas.com, Inc. and Steve Parker. Paragraph 3 stated that "Hammann . . .releases Ideas and its officers, agents, boards of directors, employees, predecessors, successors assigns, insurers, and legal representatives, except Nevada Corporation 800 Ideas, Inc. and Susan Parker if they are in any manner related . . ." Mr. Hammann thereafter filed this action against 800 Ideas, Inc. in the District of Nevada on July 8, 2008.

In its Rule 26(a)(1) Disclosures served on December 4, 2008, Defendant 800 Ideas, Inc. stated that "Defendant is no longer in possession of any documents, data compilations or tangible things related to the subject matter of this litigation." In his initial motion for sanctions, Plaintiff requested that the Court sanction Defendant 800 Ideas, Inc. for the destruction or spoliation of relevant evidence. In its opposition, Defendant 800 Ideas, Inc. stated that it ceased maintaining business records shortly after it relinquished the Disputed 800 Number and all other toll-free numbers in 1997. Defendant 800 Ideas, Inc. also argued that even if it destroyed its business records after Plaintiff sued 1-800 Ideas.com, Inc. in Minnesota, Defendant 800 Ideas, Inc. had no way of knowing that Plaintiff would initiate a subsequent suit against it. Defendant 800 Ideas, Inc. also denied that it and 1-800 Ideas.com, Inc. were sister corporations, affiliates or agents of each other.

In denying Plaintiff's first motion for sanctions, this Court stated that neither party has provided evidence to support their respective contentions. Although Plaintiff submitted a few documents which arguably indicated that Defendant 800 Ideas, Inc. may still have been in control

of the subject toll free numbers at the time Plaintiff began his efforts to acquire them in 2000, the evidence was unclear and inconclusive.  Defendant 800 Ideas, Inc., in turn, did not submit any affidavit(s) or other evidence to support its contentions that it ceased maintaining business records shortly after it relinquished the Disputed 800 Number and all other toll-free numbers in 1997.  The Court therefore concluded that while Plaintiff had not met his burden to show that Defendant 800 Ideas, Inc. failed to preserve relevant evidence, he was not precluded from renewing the motion if he developed evidence to support it. *Order (#74)*, pages 7-9.

In his renewed Motion for Rule 37 Sanctions (#78), filed on May 20, 2010, Plaintiff argued that he now had proof that Defendant 800 Ideas, Inc. controlled or was the same entity as 1-800 Ideas.com.  Plaintiff attached copies of Defendant 800 Ideas, Inc.'s annual lists of officers and directors which showed that Defendant 800 Ideas, Inc. and 1-800 Ideas.com. had the same corporate or business addresses during time periods before and after August 2000 when Plaintiff began his efforts to acquire the toll free numbers.  Plaintiff also attached phone records which he claims are for both Defendant 800 Ideas, Inc. and 1-800 Ideas.com.

Plaintiff attached as Exhibit 36 to his renewed motion copies of Defendant 800 Ideas, Inc.'s annual list of officers and directors that were filed with the Nevada Secretary of State between February 1990 and May 2009.  Although Plaintiff offered these records to show the common addresses between Defendant 800 Ideas, Inc. and 1-800 Ideas.com, they are also otherwise informative in evaluating Defendant's contention that these were and are independent corporations and business entities.  The records show that in 1990, Steve Parker was the president and Howard Rohrlick was secretary and treasurer of Defendant 800 Ideas, Inc.  Mr. Parker and Mr. Rohrlick were both listed as directors.  The 1991 list identified Steve Parker as president, secretary and treasurer.  No directors were listed.  Beginning in 1992 and for all years thereafter, Susan Parker was listed as the sole officer, president, secretary and treasurer, and director of 800 Ideas, Inc.

In its opposition to Plaintiff's renewed motion, Defendant attached copies of the Nevada Secretary of State's records for 1-800 Long Distance, Inc. which was subsequently renamed 1-800

5

IDEAS.COM, INC.[2]  *Opposition (#117), Susan Parker Affidavit, Exhibit "C."*  These records show that the original articles of incorporation for 1-800 Long Distance, Inc. were filed in March 1995. Susan Parker was identified in the articles as the resident agent, director and incorporator of 1-800 Long Distance, Inc. This corporation did not file its annual lists of officers and directors and pay the required fees for its corporate charter for 1996-1997 and 1997-1998 and it went into default status and/or its charter was revoked. 1-800 Long Distance, Inc. was reinstated as a Nevada corporation on June 2, 1998 after it filed its list of officers and directors and paid the required fees.[3] The list of officers and directors filed on June 2 1998, identified Susan Parker as the president, secretary, treasurer, and director of 1-800 Long Distance, Inc.

On December 6, 1999, 1-800 Long Distance, Inc. filed a certificate of amendment to the articles of incorporation changing its name to 1-800 IDEAS.COM., INC.  The certificate was signed by Steve Parker as president and secretary of the corporation.  The list of officers and directors, also filed on that date, identified Steve Parker as the president, secretary, treasurer, and director of 1-800 Long Distance, Inc.  Thereafter, 1-800 IDEAS.COM., INC. did not file annual lists of officers and directors in 2000-2001 and 2001-2002 and its charter was again revoked.  It was subsequently reinstated on July 24, 2002.  Steve Parker was again listed as the president, secretary, treasurer, and director of 1-800 IDEAS.COM., INC.  Susan Parker was also replaced as the resident agent of 1-800 Long Distance, Inc./1-800 IDEAS.COM., INC. on July 24, 2002 by a corporate resident agent service.

On September 30, 2002, amended and restated articles of incorporation were filed by 1-800 IDEAS.COM., INC.  These amended and restated articles were signed by David Sprouse as president of the corporation.  The amended list of officers and directors filed in January 2003 listed

---

[2] It is also identified in the corporate documents as "1-800 Ideas.com, Inc."

[3] NRS 78.170 states that a corporation that fails to make its annual filing and pay the prescribed fee is deemed in default. NRS 78.175(2) provides that a defaulting corporation's charter is revoked 13 months after the date it was required to file its annual list and pay its fees. The corporation's charter may be reinstated by filing its list of officers and directors, and making the required payments, plus penalties and the reinstatement fee. NRS 78.180.

David Sprouse as president, Richard L. Jones as secretary and treasurer and Steve Parker as director. Another amended and restated articles of incorporation were filed on January 23, 2003 and were also signed by David Sprouse as president. A list of officers and directors filed on April 2, 2003 listed David Sprouse as president, Richard L. Jones as secretary and treasurer and Steve Parker as director. The list of officers and directors filed in April 2004 and March 2005 listed David Sprouse as president and Richard L. Jones as secretary and treasurer. Steve Parker was not listed as a director in those lists. The list of officers and directors filed on April 28, 2006, however, listed Steve Parker as the president, secretary, treasurer and director of 1-800 IDEAS.COM., INC.

Susan Parker states in her affidavit that she is and has been the sole shareholder of Defendant 800 Ideas, Inc. since approximately 1994. Ms. Parker also stated that she has served as the president of Defendant 800 Ideas, Inc. since approximately 1989 and that since 1994 she has also been the only officer, director or employee of Defendant 800 Ideas, Inc. *Defendant's Opposition (#117), Affidavit of Susan Parker*, ¶¶ 6, 7. Ms. Parker stated that she was granted complete ownership rights in Defendant 800 Ideas, Inc. in 1994 pursuant to her divorce decree with Steve Parker because she had personally funded the start up of Defendant 800 Ideas, Inc. ¶ 9.[4]

Ms. Parker states that she had extensive experience in the travel industry and from 1984 to 1989 was the president of Continental Travel, an incentive travel company. *Affidavit of Susan Parker*, ¶ 4. She further states that Defendant 800 Ideas, Inc. specialized as a distributor of domestic airline reservations and sold airline tickets primarily through its call center. Defendant 800 Ideas, Inc. operated solely as a travel company that marketed its business primarily through its low fares and mnemonic telephone numbers such as 1-800-FLY CHEAP and 1-800-CHEAP CRUZ. By 1996, Defendant had approximately 150 employees, received approximately 2.3 million telephone calls and sold tickets to approximately 182,000 passengers. Defendant's revenues in 1996 were approximately $7.6 million and income from operations was approximately $1.3

---

[4] Ms. Parker's statements do not appear completely accurate because the lists of officers and directors attached to Plaintiff's renewed motion show that Steve Parker was the president of Defendant 800 Ideas, Inc. from 1989 to 1991. Susan Parker was listed as the sole officer and director of Defendant 800 Ideas, Inc. beginning in 1992.

million. This information is reportedly taken from the SEC S-1 filings of Travel Services International, Inc. ("Travel Services") which purchased Defendant 800 Ideas, Inc.'s assets in 1997. ¶¶ 10, 17. Ms. Parker states that Travel Services was founded for the purposes of creating a single source distributor of specialized leisure travel services for travel agencies and travelers. Following the initial public offering of Travel Services's stock, Ms. Parker left the company and retired in 2000. ¶ 17.

Ms. Parker states that after the sale of assets to Travel Services, Defendant 800 Ideas, Inc. acted only as a holding company for the stocks and bonds received from the sale. She adds that Defendant 800 Ideas, Inc. was primarily "kept alive" for the purpose of providing her with health insurance coverage. ¶ 20. All business records of Defendant 800 Ideas, Inc. were transferred to Travel Services upon the sale of its assets in 1997, except for a small volume of records which related to Defendant 800 Ideas, Inc.'s status as an inactive holding company. ¶ 21. Ms. Parker states that it is her understanding that the business records transferred to Travel Services were subsequently disposed of by that company in the ordinary course of its business or upon it becoming inactive as a business entity. *Id.* She does not state when Travel Services became inactive.

Ms. Parker states that she owned 1-800 Long Distance, Inc. from its incorporation in March 1995 and until January 1, 1999 when she sold it to Steve Parker. During her ownership of 1-800 Long Distance, Inc./ 1-800 Ideas.com, Inc., she was not an employee or independent contractor of the company. After the sale to Steve Parker, Ms. Parker did not act in the capacity of a shareholder or officer or director, although she was the corporation's registered agent until 2002. *Affidavit of Susan Parker*, ¶ 11. Ms. Parker states that 1-800-SAN DIEGO was incorporated as a California corporation on September 1, 1997. She owned this corporation until she also sold it to Steve Parker on January 1, 1999. Ms. Parker also states that she was not an employee or independent contractor of 1-800-SAN DIEGO. After its sale to Steve Parker, she was not a shareholder, officer, or director of the corporation. She states that 1-800-SAN DIEGO specialized in developing alternatives to using 411 directory assistance and information. On August 6, 2004, 1-800-SAN DIEGO became a qualified S-Corp. subsidiary of 1-800 Ideas.com, Inc. ¶ 12.

Ms. Parker states that 1-800 Ideas.com, Inc. and 1-800-SAN DIEGO were not affiliated with Defendant 800 Ideas, Inc. Defendant 800 Ideas, Inc. had its own separate articles of incorporation, filed its own independent tax returns and maintained its own set of books and records. *Affidavit of Susan Parker*, ¶ 13. She further states that Defendant 800 Ideas, Inc. had no formal or informal business relationship with 1-800 Ideas.com, Inc. or 1-800-SAN DIEGO, and never performed any services for or received services from either 1-800 Ideas.com, Inc. or 1-800-SAN DIEGO. ¶¶ 14, 15.

Ms. Parker acknowledges that prior to the sale of Defendant 800 Ideas, Inc.'s assets to Travel Services in 1997, Defendant 800 Ideas, Inc. and 1-800 Ideas.com, Inc. (1-800 Long Distance, Inc.) and 1-800-SAN DIEGO were located in the same office building. After 1997, Defendant 800 Ideas, Inc. used the same mailing address for corporate correspondence as 1-800 Ideas.com, Inc. ¶ 15. Ms. Parker states that she used those mailing addresses because she believed Defendant 800 Ideas, Inc. was required to maintain an actual physical address for the corporation's annual filings. ¶ 24. She states, however, that the corporations never shared the same physical office space, employees, equipment, or other business resources while Defendant 800 Ideas, Inc. was an active company. ¶ 15.

Ms. Parker states that she understands that as early as 1993, Defendant 800 Ideas, Inc. "exerted legitimate use and control over the toll-free number 1-800-246-4238." *Affidavit of Susan Parker*, ¶ 8. She acknowledged that in its written discovery responses dated April 23, 2010, Defendant 800 Ideas, Inc. stated that all of its toll free numbers would have been transferred to Travel Services upon the sale of assets in 1997. She states that "[u]pon further investigation it was revealed that Defendant relinquished use of [1-800-246-4238] to 1-800 Long Distance, the predecessor in interest to 1-800 Ideas.com, Inc., sometime in or before 1997." ¶18. She also states that the affidavit of Steve Parker, filed in the Minnesota action shows that the companion toll free number 1-888-246-4238 was acquired by 1-800 Ideas.com, Inc. in or about 1999 when the FCC first made the companion 888 toll free number available to the existing subscriber for the corresponding 800 toll free number. ¶19. *See also Affidavit of Susan Parker, Exhibit "D,"* (12/1/04 affidavit of Steve Parker filed in Minnesota Action, ¶ 47). The Court also notes that in his

9

December 2004 affidavit filed in the Minnesota action, Steve Parker stated that "[b]eginning in November 1997, the 800 Disputed Number [1-800-246-4238] was in use by 800 Ideas.com on behalf of its customer, Choice Mortgage USA." *Exhibit "D,"* ¶ 45.

Ms. Parker further states that Defendant 800 Ideas, Inc. did not possess or control any toll free telephone numbers after Travel Services acquired its assets in 1997. Nor did it acquire or reacquire any toll free numbers, including the two disputed toll free numbers, after Defendant 800 Ideas, Inc. sold its assets to Travel Services. She states that Defendant 800 Ideas, Inc. was never invoiced for or paid any invoices associated with toll free numbers after its assets were sold to Travel Services. ¶¶ 22, 23.

In regard to the telephone records cited by Plaintiff as evidence of common ownership in his renewed motion, Ms. Parker states that Defendant 800 Ideas, Inc. could have joined with 1-800 Ideas.com, Inc. (1-800 Long Distance) prior to 1997 to jointly purchase services in order to amass enough bulk usage to drive down the standard pricing rates of Sprint. She states, however, that she does not believe that Plaintiff's Exhibit 38, which is a November 26, 1997 Sprint invoice directed to 800-Holding, was associated with or attributable to Defendant 800 Ideas, Inc. She also denies that Exhibit 39, the subsequent Sprint invoices dated May 26, 2001 directed to "800 Ideas-800 LD/Holding, were associated with Defendant 800 Ideas, Inc. ¶¶ 26, 27.

## DISCUSSION

Plaintiff again styles his motion as a "Motion for Rule 37 Sanctions." As the Court stated in its previous order, Rule 37 sanctions are not available in regard to this motion because Defendant has not violated a discovery order issued by the court. *Order (#74),* pages 5-6. Defendant 800 Ideas, Inc., however, could potentially be subject to sanctions for destruction of relevant evidence under the Court's inherent powers. *Unigard Security Insurance Co. v. Lakewood Engineering & Manufacturing Corp.*, 982 F.2d 363, 367-368 (9th Cir. 1992) and *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). Sanctions for spoliation of evidence may be levied only when the sanctioned party knew or reasonably should have known that the evidence was potentially relevant to a claim, but nonetheless destroyed it or failed to take reasonable measures to preserve it. *Leon, supra. See also Peschel v. City of Missoula*, 664 F.Supp.2d 1137, 1141-42 (D.Mont. 2009).

Obviously, the party charged with spoliation must have been in the possession, custody or control of the evidence in order for the duty to preserve to arise. The party requesting sanctions for spoliation has the burden of proof on such a claim. *Akiona v. United States*, 938 F.2d 158, 161 (9th Cir. 1991). The applicable standard of proof in the Ninth Circuit appears to be by a preponderance of the evidence. *In re Napster Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1072 (N.D.Cal. 2006).

In it previous order, the Court stated that "commonality of the corporate names, place of incorporation and the relationship between Susan Parker and Steve Parker may suggest an affiliation or common control." The Court held, however, that this was not sufficient to support a finding that the entities were affiliates or under common control at the time Plaintiff began his efforts to acquire the toll free numbers or at any time thereafter. *Order (#74)*, page 8. In her affidavit, Ms. Parker states under oath that Defendant 800 Ideas, Inc. was, in fact, a distinct legal entity from 1-800 Ideas.com, Inc. or 1-800-SAN DIEGO and did not exert control over, or have records pertaining to, the subject toll free numbers when Plaintiff began his efforts to acquire them. Ms. Parker's affidavit does not resolve all doubts or suspicions about the business relationship between the corporate entities. As Plaintiff notes, Defendant has also given different answers at different times with respect to the transfer or ownership of the toll free numbers. Nonetheless, these suspicions and inconsistencies do not amount to enough evidence to satisfy Plaintiff's burden to show that Defendant 800 Ideas, Inc. had the possession, custody or control of relevant documents concerning the toll free numbers at a time when it knew or should have known of Plaintiff's potential claim.

Nor does 1-800 Long Distance, Inc./1-800 Ideas.com, Inc.'s default in the filing of its lists of officers and directors, which resulted in the revocation of its charter on two occasions, establish that it was merely an unregistered trade name under which Defendant 800 Ideas, Inc. or Ms. Parker operated. The evidence shows that 1-800 Long Distance, Inc.'s charter was revoked in 1997, but was reinstated on June 2, 1998. According to the 2004 affidavit of Steve Parker, 1-800 Long Distance, Inc. began using toll free number 1-800-246-4238 on behalf of its customer, Choice Mortgage USA in November 1997. Ms. Parker states that she sold her interest in 1-800 Long

Distance, Inc. to Mr. Parker in January 1, 1999. This appears consistent with the certificate of name change that Mr. Parker filed on December 6, 1999 as president of the corporation and the list of officers and directors also filed on the same date that listed him as the sole officer and director of the corporation. Although 1-800 Ideas.com, Inc.'s charter was again revoked in 2001, it was again reinstated in July 2002. The corporate records also show that Steve Parker was the sole officer and director of the corporation on the date of its reinstatement and presumably its sole or principal shareholder at that time.

There is nothing in these records which suggest that ownership or control of 1-800 Ideas.com, Inc.'s business assets reverted to Defendant 800 Ideas, Inc. or Ms. Parker during the period from 2000-2002 when its charter was in default status or revoked. Furthermore, the evidence presented in the Minnesota action shows that Plaintiff was referred to and dealt with a representative of 1-800 Ideas.com, Inc., Richard Jones, in regard to his attempt to acquire the two toll free numbers in 2000. As indicated above, the corporate records show that Mr. Jones was subsequently an officer and director of 1-800 Ideas.com, Inc. There is no evidence that Plaintiff dealt with any person who held himself or herself out as specifically representing Defendant 800 Ideas, Inc. or who was an officer, director or employee of the Defendant at that or some later time.

While the Court cannot rule out that some business relationship may have existed between Defendant 800 Ideas, Inc./Susan Parker and 1-800 Ideas.com/Steve Parker in or after August 2000, there is no evidence before the Court to establish that Defendant 800 Ideas, Inc. or Susan Parker exercised control over the subject toll free numbers, or any other toll-free numbers, or were in the possession, custody or control of relevant documents relating to those numbers in August 2000 or at any time thereafter. Plaintiff's renewed motion for sanctions must therefore be denied on this ground. The Court's conclusion is also somewhat fortified by the affidavit that Mr. Parker filed in the Minnesota action. In that affidavit, Mr. Parker did not deny that 1-800 Ideas.com and he, as its officer, exercised ownership and control over the subject toll free numbers. Mr. Parker, instead, attempted to justify the legality of 1-800 Ideas.com's use of the numbers under the provisions of the

Communications Act of 1934.[5]

## CONCLUSION

Plaintiff has failed to prove by a preponderance of the evidence that Defendant 800 Idea, Inc. was in possession custody or control of relevant records at the time that Plaintiff first sought to acquire the subject toll free numbers in August 2000 or at any time thereafter. Accordingly,

**IT IS HEREBY** ordered that Plaintiff's Renewal of Motion and Memorandum for Discovery Sanctions (#78) is **denied**.

DATED this 22nd day of November, 2010.

_____
GEORGE FOLEY, JR.
U.S. MAGISTRATE JUDGE

---

[5] The Court disagrees with Defendant 800 Idea, Inc.'s argument that even if it had been in possession of relevant records when it was dismissed from the District of Minnesota, it could not have anticipated that Plaintiff would later sue it in District of Nevada after settling with the other defendants. Defendant 800 Idea, Inc. was dismissed from the Minnesota action on jurisdictional grounds and not because the court found no merit in Plaintiff's claim against it. Second, the release of claims that Mr. Hammann executed in favor of Mr. Parker and 1-800 Ideas.com specifically excepted 800 Idea, Inc. and Susan Parker from the settlement. Defendant 800 Idea, Inc. has offered nothing to suggest that it believed it was included in the release of claims in the Minnesota case.