**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JEROLD ALAN HAMMANN,<br>Plaintiff,<br>v.<br>800 IDEAS INC.,<br>Defendant. | 2:08-cv-0886-LDG-GWF<br><br>**ORDER** |

After cross-motions for summary judgment were filed in this case, the court reopened discovery as to a principal witness and ordered supplemental briefing. The court now addresses the motions for summary judgment (#124 and #126), renewed and incorporated by the supplemental briefing.

Summary judgment is appropriate only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56c. In determining whether summary judgment is appropriate, the court views the facts in the light most favorable to the non-moving party and draws reasonable inferences in favor of that party. Scheuring v. Traylor Bros., Inc.,476 F.3d 781, 784 (9th Cir. 2007) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). To defeat summary judgment, the opposing parties must make a showing sufficient to establish a genuine dispute of a material fact regarding the existence of the essential elements of [the] case that [they] must prove at trial." Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir.2007) (citation omitted). On a motion for summary judgment, it is not the province of a district court judge to weigh the evidence. Anderson, 477 U.S. at 255 ("Credibility

determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether [she or] he is ruling on a motion for summary judgment or for a directed verdict.").

Plaintiff essentially claims in this case that he was prevented from starting his business "Choice Time" because defendant 800 Ideas, Inc. ("800 Ideas"), or 1-800 Ideas.com, Inc., an alleged affiliate, wrongfully deprived him of two vanity toll-free telephone numbers, 800 246-4238 (the "800 disputed number") and 888 246-4238 (the "888 disputed number"). Plaintiff contends that this conduct violated FCC regulations relating to the administration of toll-free numbers and antitrust laws. Defendant 800 Ideas' argument for summary judgment is narrow and direct. It asserts that there is no evidence to show that defendant 800 Ideas possessed the disputed numbers in August 2000, when Hammann requested them, or that 1-800 Ideas.com, Inc., the actual subscriber to the disputed numbers at the time, was the same corporate entity as defendant 800 Ideas. Rather, defendant 800 Ideas contends that the evidence shows that it never subscribed to the 888 disputed number, and while it possessed the 800 disputed number for a period of time between 1993 and 1997, it relinquished it almost three years before plaintiff sought to obtain it in 2000.

Defendant 800 Ideas characterizes its argument regarding the lack of evidence of its subscription to the disputed numbers in large part with reference to the affidavit of Susan Parker ("Parker") dated June 23, 2010. In that affidavit, Parker describes how she received sole ownership rights to defendant 800 Ideas in 1994 as a result of the dissolution of her marriage to Steve Parker. As owner of defendant 800 Ideas, Parker applied her experience in the travel industry in managing defendant 800 Ideas as a specialized distributor of domestic airline reservations, selling airline tickets primarily through its call center. Defendant 800 Ideas marketed its business, in part, through the use of mnemonic telephone numbers such as 1-800-FLY CHEAP and 1-800-CHEAP CRUZ. In 1993, defendant 800 Ideas sought trademark protection for the equivalent of its toll free number 1-800-IDEAS INC. for telecommunication services.

Parker's affidavit further explains that in 1997, defendant 800 Ideas sold all of its assets to Travel Services, and transferred all its remaining toll-free telephone numbers to Travel Services, which primarily included its travel related mnemonic toll-free telephone numbers. Travel Services acquired and combined defendant 800 Ideas' assets with those of four other travel-related companies and made an initial public offering. Parker's affidavit observes that in written discovery months before, defendant provided information indicating that all of its toll-free numbers would have been transferred to Travel Services in or about 1997 upon the sale of assets. Parker changes that position in her affidavit, testifying that "[u]pon further investigation, it was revealed that Defendant relinquished the use of the 800 Disputed Number to 1-800 Long Distance, the predecessor in interest to 1-800 Ideas.com, Inc., sometime <u>in or before</u> 1997." (emphasis added).

Parker continues to maintain that defendant 800 Ideas never used or controlled the 888 disputed number because it was 1-800 Ideas.com, Inc. that subscribed to it in or about 1999. According to Parker, defendant 800 Ideas continued to act as an inactive holding company for stocks and bonds that it received from the sale of its assets to Travel Services in 1997. Morever, all business records in the possession, custody, or control of defendant 800 Ideas were transferred to Travel Services upon the sale of defendant 800 Ideas assets, other than a small volume of records related to defendant 800 Ideas' status as an inactive holding company for stock and bonds. Parker testifies that defendant 800 Ideas did not acquire or reacquire any toll-free telephone numbers at any time after the 1997 sale.

In its motion for summary judgment, defendant 800 Ideas describes the entity known as 1-800 Ideas.com, Inc. According to Parker, she owned this entity's predecessor, 1-800-Long Distance, until it was sold in January 1999 to Steve Parker. After the sale, Steve Parker changed the name of the company to 1-800 Ideas.com, Inc. Parker testifies that, following the sale of 1-800-LONG DISTANCE, she did not act as shareholder, director, officer, employee or independent

contractor to the company under its original name, or after it was named 1-800 Ideas.com, Inc. Thus, defendant 800 Ideas claims that at the time that it allegedly deprived plaintiff of the 800 disputed number in 2000, 1-800 Ideas.com, Inc., and not it, owned the number. Likewise, Parker affies that she owned 1-800-SAN DIEGO between 1997, when it was incorporated in California, and 1999, when she sold it to Steve Parker. Following the sale, Parker asserts that she was not a shareholder, director, officer, employee or independent contractor of 1-800-SAN DIEGO, and that in 2004, it became a subsidiary of 1-800 Ideas.com, Inc.

Plaintiff has offered a number of different scenarios to challenge defendant 800 Ideas' assertion that it was not a subscriber to the disputed numbers at the time plaintiff sought to acquire them. Plaintiff sets forth two general positions: First, defendant still possessed the disputed numbers in 2000; and second, even if Parker claims either to have sold the 800 disputed number to Steve Parker, or never subscribed to the 888 disputed number (which was subscribed to by Steve Parker's company 1-800-Ideas.com, Inc.), Parker's post-sale business and Steve Parker's company, 1-800-IDEAS.com, Inc., lacked corporate separateness and were in fact the same company. In view of the applicable law, the court looks at the evidence to determine if the facts, viewed in the light most favorable to, and drawing all inferences in favor of, the plaintiff, suggests a linkage between defendant 800 Ideas and the disputed numbers during the relevant time frame.

Initially, the court addresses several legal issues which bear on the motions for summary judgment. Plaintiff argues that defendant had the duty to return at least the disputed numbers to the SMS/800 Database after they no longer intended to use the numbers in their own toll-free telephone services. An extension of this argument leads the court, and the parties, to the FCC regulations regarding hoarding, brokering, and routing of toll free numbers. Title 47 C.F.R. 52.107(a) provides in pertinent part:

> [H]oarding is the acquisition by a toll free subscriber . . . . of more toll free numbers than the toll free subscriber intends to use for the provision of toll free service. The definition

of hoarding also includes number brokering, which is the selling of a toll free number b a private entity for a fee.

(1) Toll free subscribers shall not hoard toll free numbers.

. . .

The prohibition on subscribers selling their interests in toll free numbers appears to run afoul of defendant's original position that the disputed numbers were included in the sale and transfer of defendant 800-IDEAS' assets to Travel Services in 1997. Defendant 800 Ideas argues that despite the language of the regulation, a subscriber has the right to transfer a toll free number to another subscriber, completely foregoing returning the number to the SMS/800 database, as long as there is no violation of the lag time, hoarding rules, and first come, first served policy. Defendant 800 Ideas cites Ford Motor Co. v. U.S. Auto Club, Motoring Div., 2008 WL 4387077 (N.D. Tex. Sept. 26., 2008), for the proposition that companies can transfer toll free numbers back and forth while receiving monetary benefit, at least indirectly from the transfers, without violating the FCC regulations. That case, however, is different than this one, because in that case the use of the numbers in question was temporarily transferred under a service contract, and Ford did not give up its permanent rights to them. At the termination of the roadside assistance contract the transferee merely transferred the numbers back to Ford. See also Business Edge Group, Inc., v. Champion Mortgage Co., 519 F.3d 150, 154 (3d Cir. 2008) (finality of transfer of rights component of sale under 52.107).

Furthermore, while 52.107 was apparently adopted in April of 1997, defendant 800 Ideas has not clarified the exact date of the 1997 sale of its assets, nor made a substantial argument in opposition to plaintiff's position that a subscriber's practice of selling a toll-free number was not legitimate even before the regulation. In addition, plaintiff puts forth a letter dated November 12, 1997, purportedly from defendant 800 Ideas to Choice Mortgage USA dealing with the 800 disputed number. Previously, defendant 800 Ideas argued that the letter is not evidence that it

subscribed to the 800 disputed number when plaintiff attempted to acquire the number in 2000; but it also cuts the other way, suggesting that defendant 800 Ideas controlled the number at least through most of 1997, and therefore would have subjected it to the 52.107 anti-hoarding regulation.

Here, a genuine issue of fact exists regarding whether defendant 800 IDEAS transferred the 800 disputed number at the sale of assets in 1997 in violation of 52.107 as defendant 800 IDEAS appears to have asserted in its discovery, as opposed to defendant 800 IDEAS' clarification that it "relinquished" the use of the number sometime before the sale of the assets. This issue of fact also impacts defendant 800-IDEAS' statute of limitations argument since the violation of the regulation arguably would have continued through the time period in which plaintiff sought the number and up until the time in which he acquired the numbers in the settlement of the Minnesota action.

Finally, plaintiff's self-generated summaries are not sufficiently authenticated pursuant to Fed. R. Evid. 901(b)(1) to consider in a motion for summary judgment as they are not a document authenticated through personal knowledge by affidavit of a "witness who wrote [it], signed, used it, or saw others do so." Orr v. Bank of Am., NT & SA, 285 F.3d F.3d 764, 773 (9th Cir. 2002). Under Fed. R. Evid. 901(b)(4), however, the district court can consider alternative means of authentication including review of the document's appearance, content, substance, internal patterns, or their distinctive characteristics, taken in conjunction with circumstances. Plaintiff asserts that the foundation documents for the summaries he presents are sealed documents disclosed in the Minnesota action. A review of the summaries indicates that they contain detailed billing information, and taking into account the lack of challenge of the accuracy of the information in the Minnesota action, and by defendant 800 Ideas in this motion, the court, for the narrow purpose of summary judgment, considers them in opposition to defendant's motion. Also, what plaintiff describes as printouts and documents from electronic files produced during the Minnesota action, while lacking some foundation, will be considered on the same basis.

Plaintiff's materials contain no smoking gun regarding defendant 800 Ideas' continuing control over the disputed numbers or a lack of corporate separateness between defendant 800 Ideas and 1-800 Ideas.com, Inc. But they do minimally raise, in the opinion of the court, significant questions as to which entity was invoiced for and listed as the subscriber to the disputed numbers during the relevant time period. The court notes that in the affidavit of Steven Parker sworn to on December 1, 2004, in the Minnesota action, he testified that "[b]eginning in November 1997, the 800 Disputed Number was in use by 800 Ideas.com on behalf of its customer, Choice mortgage USA." (Dkt. 21-3 at 9:45). Of course, as addressed previously, the letter dated November 12, 1997, dealing with this relationship is purportedly from defendant 800-IDEAS, not 1-800 Ideas.com, Inc. In the end, while plaintiff's extensive evidentiary submissions are not a model of precision, taken in their totality, they raise a genuine issue of material fact regarding defendant 800 Ideas' involvement with the disputed numbers. The court further finds unpersuasive the other arguments presented by the parties in support of their motions. Accordingly,

THE COURT HEREBY ORDERS that plaintiff's motion for summary judgment (#124) and defendant 1-800 Ideas Inc.'s motion for summary judgment (#126) are DENIED.

DATED this 23 day of March, 2012.

Lloyd D. George
United States District Judge