# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JEROLD ALAN HAMMANN, | 2:08-cv-0886-LDG-GWF |
| Plaintiff, | |
| v. | **ORDER** |
| 800 IDEAS INC., et al., | |
| Defendants. | |

This matter comes before the court on defendant Susan Parker's cross-motion to strike the expert report of Dr. Mark E. Meitzen (#224, opposition #227, reply #229). Plaintiff's complaint centers on his attempts to launch a business enterprise under the name "ChoiceTime." Plaintiff alleges that part of his business plan was to obtain two vanity toll free numbers, but was prevented from doing so by the wrongful subscription to those numbers by defendants or related entities. Plaintiff relies on Meitzen for his claim that he is entitled to damages related to this alleged wrongdoing for lost profits, lost business opportunities, and unreturned investment costs, in the range of $3.6 million to $24 million over a five-year period beginning in January 2002. Parker challenges Meitzen's report and testimony as unreliable and speculative, in particular, for being based on the assumption that, but for the alleged unavailability of the vanity numbers, Choice Time would never have generated any business.

The court takes a cue from Judge Schiltz's 2006 opinion in which Hammann proffered the same expert and essentially the same report in support of his damages in the Minnesota action. Judge Schiltz found Hammann's damage claims to be "weak," and admonished, "[i]t is not at all clear to the Court that Hammann will be entitled to recover any monetary relief, much less the

huge sums that he seems to be contemplating." Hammann v. 1-800 IDEAS.COM, INC, 455 F. Supp. 2d 942, 948 (D. Minn. 2006). After discussing the leading Eighth Circuit case on lost profits, Mostly Media, Inc. v. U.S. West Communications, 186 F.3d 864, 866 (8th Cir. 1999), Judge Schiltz faulted Hammann for basing his damages on the belief that,

> [H]ad his business been able to use one toll-free number instead of another, the business would have been much more successful–millions of dollars more successful. This is inherently speculative, and the evidence submitted by Hammann only emphasizes the speculative nature of his damages claim. For example, Hammann's expert estimates that the alleged violations of the Communication Act cost Hammann anywhere from $3.6 to $24 million in lost profits, lost opportunities, and unreturned investment cost. The fact that the range of estimated damages is so huge–a factor of almost seven–is, in and of itself, evidence of how much speculation was involved in arriving at the estimate.
>
> More Importantly, the estimate of Hammann's expert is based to a substantial extent on a comparison of Hamman's business (ChoiceTime) with OpenTable, which is apparently the most successful online restaurant reservation service in America. (ChoiceTime also aspires to be an online restaurant reservation service.) The report admits, though, that OpenTable does not "advertise[] a vanity toll-free number to make reservations" Thus the report provides no reason at all for believing that being able to use a different toll-free number would have turned ChoiceTime into OpenTable. Moreover, the report does not explain why OpenTable is the appropriate benchmark, as opposed to the thousands of start-up businesses that failed despite having access to a memorable vanity number.

Id. at 949 (citations omitted).

Judge Schiltz went on to warn Hammann that he had a heavy burden in proving that had he only acquired the toll-free numbers 1-800-CHOICETIME and 1-888-CHOICETIME, his business would have been as successful as OpenTable.com, or even Priceline, Travelocity, and Expedia cited by Hammann's expert. Id. at 950. Finally, while Judge Schiltz did not preclude the use of the expert, he warned Hammann that "nothing precludes defendants from moving at trial for judgment as a matter of law on the issue of damages." Id.

The court agrees with Judge Schiltz' impressions and notes that Hammann's damages showing in this case suffers from the same general deficiencies identified by Judge Schiltz. The court, however, also must make a reasoned determination about whether theses deficiencies go to admissibility or impeachment. See Alaska Rent-A-Car v. Avis Budget Group, Inc., — F.3d —,

2013 WL 4779709, at *7 (9th Cir. 2013).  The <u>Alaska Rent-A-Car</u> court has explained that pursuant to <u>Daubert v. Merrell Dow Pharm.</u>,

> [T]he court must assess [an expert's] reasoning or methodology, using as appropriate such criteria as testability, publication in peer reviewed literature, and general acceptance, but the inquiry is a flexible one.  Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.  In sum, the trial court must assure that the expert testimony "both rests on a reliable foundation and is relevant to the task at hand."
>
> . . .
>
> Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.  The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.

<u>Id</u>. (citations omitted).

In this instance, the court is reluctant to rule on the admissibility of Meitzen's testimony and report without a further assessment of that evidence in the setting of a <u>Daubert</u> hearing. Accordingly, the court will deny Parker's motion without prejudice, and allow Parker to move the court to schedule a pre-trial <u>Daubert</u> hearing (within 30 days of the new trial date) on Meitzen's report and proposed testimony.  If the court schedules such a hearing upon defendants' request, Meitzen will be required to appear in person to testify.

THE COURT HEREBY ORDERS that defendant Susan Parker's motion to strike the expert report of Dr. Mark E. Meitzen (#224) is DENIED without prejudice.

THE COURT FURTHER ORDERS that defendants may file a motion for the court to schedule a <u>Daubert</u> hearing (within 30 days of the new trial date) to consider the admissibility of Meitzen's report and testimony.

DATED this 26 day of September, 2013.

_____
Lloyd D. George
United States District Judge

3